UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD WISDOM,<br><br>                Petitioner,<br><br>   v.<br><br>WARDEN WAYMAN BARRY,<br><br>                Respondent. | Case No. 1:19-cv-00052-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho prisoner Ronald Wisdom ("Petitioner" or "Wisdom"), challenging Petitioner's Ada County convictions on three counts of lewd conduct. Dkt. 3. The Petition is now fully briefed and ripe for adjudication.

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. Dkt. 12; *see* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006). Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief.

## BACKGROUND

Petitioner was charged in the Fourth Judicial District Court in Ada County, Idaho, with three counts of lewd conduct with a minor and with being a persistent violator. The

jury found Petitioner guilty on the lewd conduct charges, and Petitioner pleaded guilty to the persistent violator charge. State's Lodging D-4 at 1–2. Petitioner was sentenced to concurrent unified terms of 40 years in prison with 20 years fixed. The Idaho Court of Appeals affirmed Petitioner's convictions and sentences. State's Lodging B-4. Petitioner pursued post-conviction remedies, but the Idaho state courts denied relief.

In his federal Petition, Petitioner asserts a single claim of ineffective assistance of trial counsel ("IATC"). Specifically, Petitioner claims that trial counsel rendered ineffective assistance by opening the door to prejudicial evidence regarding the victim's previous disclosures of the abuse. The Idaho Court of Appeals rejected this claim on the merits in Petitioner's post-conviction proceedings. State's Lodging D-4.

Respondent asserts that Petitioner has not shown that he is entitled to issuance of a writ of habeas corpus. For the reasons that follow, the Court agrees.

## DISCUSSION

1. **Habeas Corpus Standards of Law**

A federal court may grant habeas corpus relief when it determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

MEMORANDUM DECISION AND ORDER - 2

established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (internal quotation marks and citations omitted).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*,

529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The source of clearly established federal law must come only from the holdings of the United States Supreme Court. Although circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent, *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000), circuit law may not be used "to refine or sharpen a general principle of Supreme Court

jurisprudence into a specific legal rule that th[e] Court has not announced," *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Therefore, evidence that was not presented to the state court cannot be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014) ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court.").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was

incorrect but whether that determination was unreasonable—a substantially higher threshold."). State court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Kirkpatrick v. Chappell*, 926 F.3d 1157, 1170 (9th Cir. 2019) (stating that § 2254(e)(1) "appears to apply to all factual determinations made by state courts").

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to, or an unreasonable application of Supreme Court precedent or by establishing that the state court's factual findings were unreasonable—then the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles*, 752 F.3d at 778. Also, if a state court did not adjudicate a claim on the merits, but the claim is properly before the federal habeas court, the federal court reviews the claim de novo. *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at

1167-68; *Kirkpatrick*, 926 F.3d at 1170 ("Unlike § 2254(d), § 2254(e)(1)'s application is not limited to claims adjudicated on the merits [by a state court]."). Conversely, if a state court factual determination is unreasonable, the federal court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d at 1000.

Generally, even if a petitioner succeeds in demonstrating a constitutional error in his conviction, he is entitled to federal habeas relief only if the petitioner "can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is not harmless, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted). However, some types of claims, including IATC claims, "are analyzed under their own harmless error standards, which can render *Brecht* analysis unnecessary." *Jackson v. Brown*, 513 F.3d 1057, 1070 (9th Cir. 2008); *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009) ("[W]here a habeas petition governed by AEDPA alleges ineffective assistance of counsel …, we apply *Strickland*'s prejudice standard and do not engage in a separate analysis applying the *Brecht* standard.").

2. **Petitioner Is Not Entitled to Habeas Relief**

   A. *Factual Basis of Petitioner's Claim*

   Petitioner's convictions are based on sexual misconduct against M.L., Petitioner's wife's daughter, between January 2007 and May 2013. *See* State's Lodging A-1 at 8–9,

MEMORANDUM DECISION AND ORDER - 7

148–49. M.L. was fourteen years old on May 8, 2013, when she disclosed to a friend that Petitioner had sexually abused her. State's Lodging A-4 at 505. The friend told M.L.'s uncle, who then told M.L.'s mother. *Id.* at 157–58, 304–06, 483–84, 498. M.L.'s stepbrother called the police, and an investigation followed. *Id.* at 201–02, 484.

M.L's mother did not, at the beginning of the investigation, inform detectives that M.L. had previously disclosed any sexual abuse. However, M.L.'s mother later told a detective that M.L. had "made three previous claims that [Petitioner] abused her." State's Lodging D-4 at 1.

At trial, M.L.'s mother began to testify, on direct examination, about an incident that occurred when M.L. was five years old. Recognizing that M.L.'s mother was about to testify as to what M.L. told her at that time, defense counsel objected. Outside the presence of the jury, M.L.'s mother stated that, when M.L. was five, M.L. had told her that "Daddy Ron had touched her." State's Lodging A-4 at 334–35. Defense counsel argued that the testimony was hearsay.

The trial court agreed and sustained the objection, but explained that the testimony might be admissible for purposes of rebutting a defense claim of recent fabrication:

| | |
|---|---|
| The Court: | … [I]s part of the defense in this case going to be … an argument that … [M.L.] never disclosed any of these events until she was 15 years old? |
| [Defense counsel]: | Yes. She has never said that she has disclosed to any of the events. During the course of the investigation, she says she never told them. |
| The Court: | Well, if that comes up during the course of the trial, then it may well be that this type of evidence may come in for a |

> limited purpose, not to prove the truth of the statements but to prove that in fact she had made disclosures previously if you're going to be arguing to the jury that she never disclosed it and therefore it's a fabrication.
>
> So do you understand where I'm coming from?
>
> [Defense counsel]: Yes.

*Id*. at 346.

On cross-examination, defense counsel asked M.L.'s mother the following question: "And when you were talking to Detective Ducharme there in I believe May, you told her basically that you didn't have any information, that you had never seen anything. Correct?" *Id*. at 398. M.L.'s mother answered, "Yes." *Id*. at 399.

On redirect, the prosecutor returned to the issue of the prior disclosure. With the jury absent, the prosecutor argued that defense counsel's question about the conversation between Detective Ducharme and M.L.'s mother had opened the door for the prosecutor to ask about M.L.'s previous disclosure of abuse when she was five years old. *Id*. at 415–19, 420–21. Defense counsel argued that the question was aimed only at the discussion between the detective and M.L.'s mother; the point was that M.L.'s mother told the detective, in that specific interview, that she did not have any information—not that M.L.'s mother, in fact, did not have any information about the abuse. *Id*. at 419–420.

The trial court determined that defense counsel's question had opened the door to some limited redirect. With the jury present, the prosecutor adopted the court's phrasing of the permissible question and asked, "But isn't it a fact that [M.L.] had told you about

incidents of touching prior to May the 8th of 2013?" *Id*. at 421, 423. M.L.'s mother answered, "Yes." *Id*. at 423.

M.L. herself also testified as to previous disclosures of the abuse. She stated that, prior to May 8, 2013, she had talked to her mother about Petitioner's having touched her. *Id*. at 478. M.L. testified that the touching continued even after she told her mother. *Id*.

The jury found Petitioner guilty of three counts of lewd conduct.

### B. *Clearly Established Law Governing Ineffective Assistance Claims*

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The Supreme Court explained the standard for IATC claims in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A petitioner must establish both deficient performance and prejudice to prove an IAC claim. *Id.* at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one prong is not satisfied and would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the reasonableness of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91. That is, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Further, counsel is not deficient in an area where an investigation would not have been fruitful for the defense.

The Ninth Circuit has provided some insight into the *Strickland* standard when evaluating an attorney's "strategy calls." These cases are instructive in the Court's assessment of whether the state court reasonably applied *Strickland*. *See Duhaime*, 200 F.3d at 600. First, tactical decisions do not constitute IAC simply because, in retrospect, better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Second, a mere difference of opinion as to tactics does not render counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981). Third, "counsel's investigation must determine trial strategy, not the other way around." *Weeden v. Johnson*, 854 F.3d 1063, 1070 (9th Cir. 2017); *see also id.* ("Weeden's counsel could not have reasonably concluded that obtaining a psychological examination would conflict with his trial strategy without first knowing what such an examination would reveal.").

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner

"must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

The foregoing standard, giving deference to counsel's decision-making, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two

> questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S. Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. That is, when evaluating an IAC claim under § 2254(d), this Court's review of that claim must be "doubly deferential." *Pinholster*, 563 U.S. at 190 (internal quotation marks omitted).

### C. State Court Decision

In rejecting Petitioner's IATC claim based on defense counsel's opening the door to evidence that M.L. had disclosed the sexual abuse before May 8, 2013, the Idaho Court of Appeals correctly cited *Strickland* as providing the governing standard. State's Lodging D-4 at 6. The state court first determined that defense counsel made a tactical decision to ask M.L.'s mother whether, during her earlier discussion with the detective, she said she had any information about the sexual abuse allegations:

> The mere possibility of an error is not sufficient to overcome the presumption that Wisdom's trial counsel asked questions during cross-examination for tactical reasons. This Court starts with the presumption that trial counsel's actions were strategic. Because whether counsel acted strategically is a contested fact, we look to the record to determine whether Wisdom alleged any facts or provided any evidence to support his claim that the question may have been a "slip of the tongue"; if so, we must view that evidence in the light most favorable to Wisdom. In this case, there is no evidence that the question was a "slip of the tongue." As acknowledged by Wisdom on appeal, *it is only a possibility that the question may not have been intentional*. Without any evidence to support his claim that the question was not strategic, there is no evidence to create a genuine issue of material fact regarding whether trial counsel's performance was deficient.

> Viewing evidence in the light most favorable to Wisdom still requires evidence to consider, rather than speculative possibilities. Second, *defense counsel's argument that he intended to ask the question to challenge Mother's credibility but did not believe the question opened the door to the challenged evidence indicates that the question was intentional*, not a slip of the tongue. We conclude *Wisdom has not offered any admissible evidence that counsel's questions were not a strategic decision.*

*Id*. at 6–7 (emphasis added).

The state appellate court next determined that the strategic decision to ask the question was not objectively unreasonable and, therefore, did not constitute deficient performance under *Strickland*:

> Wisdom does not establish a genuine issue of material fact regarding whether the representation from his trial counsel fell below an objective standard of reasonableness. Wisdom asks this Court to consider how alternate trial strategies may have been more effective or less prejudicial. However, our appellate review of reasonableness is limited. As previously stated, *we do not second-guess tactical or strategic decisions of trial counsel unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation*. Wisdom argues that although there may have been adequate preparation and knowledge of the relevant law, trial counsel's deficiencies are capable of objective evaluation. We disagree. *Wisdom's defense at trial was a defense of the victim's recent fabrication and a challenge to Mother's credibility, and Wisdom made clear to the district court that he would be pursuing that defense. It was the pursuit of that defense that opened the door to evidence of the victim's prior disclosure, not just the specific question asked.*
>
> *Wisdom pursued that defense with the understanding that the evidence of the prior disclosure could be admitted. Thus, trial counsel's decision to limit the way in which the evidence would be presented was presumptively a strategic decision based on adequate preparation and knowledge of the law.*

> Because Wisdom fails to point to admissible evidence to
> show that the decision to ask the questions (and pursue the
> defense of recent fabrication) was objectively unreasonable,
> he does not establish that he received deficient representation
> from his trial counsel. Thus, Wisdom fails to satisfy the first
> prong of *Strickland*.

*Id*. at 8 (emphasis added) (internal citation omitted). Because Petitioner had not established that his trial counsel performed deficiently, the Idaho Court of Appeals did not address the prejudice prong of *Strickland*.

### D. The State Court's Rejection of Petitioner's IATC Claim Was Not Unreasonable under AEDPA

The state court found that defense counsel's question was tactical. That factual finding is not unreasonable under 28 U.S.C. § 2254(d)(2), and Petitioner has not rebutted it by clear and convincing evidence under 28 U.S.C. § 2254(e)(1).

As noted by the state appellate court, Petitioner's trial counsel was aware that asking a question relating to what M.L.'s mother knew about her daughter's disclosures—and when she knew it—could open the door to testimony that M.L. had previously told her mother about the abuse. The trial court was very clear in its ruling that such testimony, if offered to rebut a claim of recent fabrication, would not be hearsay because it would not be offered for the truth of the matter asserted. During cross-examination, counsel tried to craft a question that focused solely on what M.L.'s mother told—or did not tell—the detective in that first interview. This was a tactical decision.

However, the trial court disagreed that counsel's question was so limited and held that it implied a claim of recent fabrication. Trial counsel cannot be faulted for failing to predict that the trial court would disagree with counsel about the scope of the question.

MEMORANDUM DECISION AND ORDER - 16

Counsel attempted to get favorable evidence in front of the jury, while keeping out unfavorable evidence. That this strategic decision did not work is not evidence of deficient performance. *See Bashor*, 730 F.2d at 1241 ("With the benefit of hindsight we know that [counsel's] strategy was incorrect; however, it did not constitute ineffective assistance of counsel."); *Mayo*, 646 F.2d at 375 ("Mayo's allegations amount to nothing more than a difference of opinion with respect to trial tactics. That alone generally does not constitute a denial of effective assistance of counsel.").

The double deference that applies when reviewing ineffective assistance claims in habeas proceedings leaves no room for this Court to second-guess the tactical decision of Petitioner's counsel with the benefit of hindsight. *Pinholster*, 131 S. Ct. at 1403; *Strickland*, 466 U.S. at 689. The Idaho Court of Appeals' rejection of Petitioner's IATC claim was not an unreasonable application of *Strickland*, nor was it based on an unreasonable finding of fact. Therefore, Petitioner is not entitled to habeas relief.

### E. *On De Novo Review, Petitioner Cannot Show Prejudice, Even If Trial Counsel Had Performed Deficiently*

The Idaho Court of Appeals did not reach the issue of prejudice. Therefore, this Court considers it de novo.

The Court concludes that Petitioner was not prejudiced by trial counsel's question and the resulting testimony of M.L.'s mother. The evidence that M.L. had previously disclosed the abuse was not before the jury solely as a result of M.L.'s mother—M.L. herself said the same thing. Therefore, even if trial counsel should not have asked the question that opened the door to M.L.'s mother's testimony about prior disclosures, that

evidence was still before the jury. Thus, Petitioner has not shown a reasonable probability that the outcome of his trial would have been different absent any deficient performance.

**3.  Conclusion**

For the foregoing reasons, the Court will deny the Petition.

## ORDER

**IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus (Dkt. 3) is DENIED, and this entire action is DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: February 10, 2020

_____
B. Lynn Winmill
U.S. District Court Judge